IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**<br><br>    **Plaintiff,**<br><br>**VERSUS**<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF OMNI NATIONAL BANK, ET AL.,**<br><br>    **Defendants.** | **CIVIL ACTION NO.**<br>**1:12-cv-01740-TCB**<br><br><br><br>Consolidated, for Pre-trial and Discovery Purposes, with<br>1:12-cv-00896-RLV<br>1:12-cv-01103-TCB<br>1:12-cv-01877-RLV |

# FDIC-R'S REPLY IN SUPPORT OF ITS
# <u>MOTION FOR SUMMARY JUDGMENT</u>

## **TABLE OF CONTENTS**

I.    ARGUMENT ........................................................................................... 1

    A.    The Interpretive Doctrine Contra Proferentem Does Indeed Apply ................................................................................ 1

    B.    The Retroactive Exclusion Does Not Apply ......................................... 2

    C.    The IvI Exclusion Does Not Apply ....................................................... 9

        1.    FDIC-R does not bring claims by, on behalf of, or at the direction of any of the Assureds. ..................................... 9

        2.    The *BancInsure* Decisions Cited by Lloyd's Contain Different Policy Language and Do Not Apply ........................................................................................ 14

II.    CONCLUSION ...................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*BancInsure, Inc. v. FDIC*, 796 F.3d 1226 (10th Cir. 2015) ..................................... 14

*Brecek & Young Advisors v. Lloyd's of London Syndicate 2003,* No. 4:11CV3003, 2012 U.S. Dist. LEXIS 163441 (D. Neb. Nov. 14, 2012) ................................. 2, 4

*Brust v. Mut. of Omaha Ins. Co.*, 724 N.Y.S.2d 254 (N.Y. Sup. Ct. 2000) ........... 12

*Buczkowski v. FDIC*, 415 F.3d 594 (7th Cir. 2005) ................................................ 10

*Continental Cas. Co. v. Wendt*, 205 F.3d 1258 (11th Cir. 2000) ............................. 5

*County Seat Stores, Inc.*, 280 B.R. 319 (Bankr. S.D.N.Y. 2002) ........................... 13

*Davis*, No. 3:12-cv-113-TCB, 2013 U.S. Dist. LEXIS 46249 (N.D. Ga. Mar. 20, 2013) ..................................................................................................................... 14

*Eureka Federal Savings & Loan Ass'n v. American Casualty Co.*, 873 F.2d 229 (9th Cir. 1989) ......................................................................................................... 7

*FDIC v. North Savannah*, 686 F.3d 1254 (11th Cir. 2012) ..................................... 10

*Federal Savs. and Loan Ins. Corp. v. Burdette*, 718 F. Supp. 649 (E.D. Tenn. 1989) ............................................................................................................................... 7

*Florida Department of Financial Services v. National Union Fire Insurance Co.*, No. 4:11-cv-242 (N.D. Fla.) .................................................................................. 13

*Foster v. Summit Med. Sys.*, 610 N.W.2d 350 (Minn. Ct. App. 2000) ..................... 4

*Glascoff,* 2014 U.S. Dist. LEXIS 64858 .................................................................. 7

*Kilcher v. Cont'l Cas. Co.*, 747 F.3d 983 (8th Cir. 2014) ........................................ 4

*Manley v. AmBase Corp.*, 337 F.3d 237 (2d Cir. 2003) ......................................... 12

*Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.,* 702 F.3d 118 (2d Cir. 2012) ................................................................................................................ 9

*Morgan Stanley Group, Inc. v. New Eng. Ins. Co.*, 225 F.3d 270 (2d Cir. 2000) ..... 2

*O'Melveny & Myers v. FDIC,* 512 U.S. 79 (1994)...................................................11

*Progressive Cas. Ins. Co. v. FDIC as Receiver for Omni Nat'l Bank*, 926 F. Supp.
2d 1337 (N.D. Ga. 2013).......................................................................................10

*Progressive Cas. Ins. Co. v. FDIC as Receiver for Vantus Bank*, 80 F. Supp. 3d
923 (N.D. Iowa 2015) ("*Vantus Bank*")................................................................11

*St. Paul Mercury Ins. Co. v. FDIC as Receiver for Cmty. Bank & Trust* ("*Miller*"),
774 F.3d 702 (11th Cir. Ga. 2014).........................................................................10

*St. Paul Mercury Ins. Co. v. Hahn*, No. 8:13-cv-424-AG, 2014 U.S. Dist. LEXIS
153643, at *5 (C.D. Cal. Oct. 8, 2014) .................................................................11

*Wade v. Allstate Fire & Cas. Co.*, 751 S.E.2d 153 (Ga. Ct. App. 2013)..................12

*Weaver v. Axis Surplus Ins. Co.,* No. 13-cv-7374, 2014 U.S. Dist. LEXIS 154746
(E.D.N.Y. Oct. 30, 2014) .........................................................................................4

**Statutes**

12 U.S.C. § 1821 ........................................................................................... 10, 13

12 U.S.C. § 1823 ...............................................................................................10

The Opposition [Doc 152] filed by Certain Underwriters at Lloyd's London ("Lloyd's") concedes that the claims of the Federal Deposit Insurance Corporation as Receiver for Omni National Bank ("FDIC-R") and resulting judgments against the Lloyd's Insureds[1] are covered by the plain terms of the Policy, unless either the Retroactive or IvI Exclusion applies.  Further, Lloyd's own admissions and concessions establish, beyond any reasonable dispute, that the Retroactive and IvI Exclusions do not relieve Lloyd's of its obligations to provide its insureds coverage for the FDIC-R's claims.  For these reasons, discussed below and in greater detail in FDIC-R's Opposition to Lloyd's Cross-Motion for Summary Judgment,[2] the FDIC-R's Motion for Summary Judgment [Doc. 144] should be granted, declaring that the Policy provides coverage for the FDIC-R's judgments against the Lloyd's Insureds.

I.  **ARGUMENT**

   A.  **The Interpretive Doctrine Contra Proferentem Does Indeed Apply**

To the extent the court finds any ambiguity in the Retroactive or IvI Exclusions, contra proferentem should be employed.  Lloyd's own factual

---

[1]  Unless otherwise defined herein, capitalized terms have the same meaning ascribed to them in FDIC-R's Memorandum in Support of Motion for Summary Judgment ("FDIC-R's Motion") [Doc. 144-1].

[2]  Because Lloyd's Cross-Motion for Summary Judgment ("Lloyd's Motion") and Lloyd's Opposition to FDIC-R's Motion for Summary Judgment ("Lloyd's Opposition" or "Lloyd's Opp.") are largely duplicative, this Reply memorandum is substantially similar to FDIC-R's Opposition to Lloyd's Motion.

recitation reveals that Lloyd's summarily *rejected* the broker's attempt to negotiate the terms, and instead imposed its own standard language for both exclusions on the Lloyd's Insureds.[3] There was no negotiation concerning the terms of the exclusions themselves, and thus, any ambiguity in the terms imposed by Lloyd's must be construed against Lloyd's.[4] *Morgan Stanley Group, Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 280 (2d Cir. 2000).

### B. The Retroactive Exclusion Does Not Apply

The FDIC-R's Motion for Summary Judgment explained that under New York law, Lloyd's has not established and cannot prove there is a "sufficient factual nexus" between the Wrongful CDLD Lending and Wrongful OREO Expenditure claims for the Retroactive Exclusion to apply. *See* FDIC-R's Motion [Doc. 144-1], pp. 13-15.[5] Lloyd's attempts to confuse the appropriate standard for interpreting the Retroactive Exclusion by citing cases in which the relevant policy provision lacked the "common nexus" language included in the Lloyd's Policy.

---

[3] *See* FDIC-R's Response to Lloyd's Additional Facts 59-60 (citing Warrior Depo. [Doc. 150], 155:2-156:20 (explaining that Retroactive Exclusion incorporated into the Policy was a standard Lloyd's wording), 202:4-206:8 (explaining that Lloyd's rejected the IvI Exclusion proposed by the Bank's broker and demanded that the Policy contain the standard Lloyd's wording instead)).

[4] *Id.*

[5] *See also Breck & Young Advisors v. Lloyd's of London Syndicate 2003,* 715 F.3d 1231, 1238 (10th Cir. 2011) (in which Lloyd's admitted that the "sufficient factual nexus" test provided the relevant analysis of whether certain wrongful conduct constituted interrelated wrongful acts).

*See* Lloyd's Opp. [Doc. 152], authorities at pp. 15-16 and n. 47.

Lloyd's Opposition makes clear that the supposed "common nexus" upon which Lloyd's relies to support application of the Retroactive Exclusion is the Bank's strategy to retain and renovate its OREO for lease (rather than immediate sale), which the Bank's Board implemented *after* the Wrongful CDLD Lending had ceased.[6]  However, Lloyd's admits that the Bank's OREO plan itself was not wrongful, but was, instead, a "common strategy" implemented by "banks with rising levels of OREO, especially in down real estate markets," and that "helped banks[.]"[7]  It is undisputed that expenditures made pursuant to the OREO plan prior to September 15, 2008, and prior to the Lloyd's Policy Period, were not Wrongful Acts.[8]  Expenditures made pursuant to the OREO plan only became Wrongful after September 15, 2008, the date the Lloyd's Insureds were warned that the Bank's failure "in the near term" was "highly probable," after which further expenditures on OREO made no economic sense.[9]

---

[6]  *See* Lloyd's Opp. [Doc. 152], at 17 ("these expenditures were made pursuant to a strategy that the Bank implemented as a *result* of the CDLD Wrongful Acts.").
[7]  *See* Expert Report of Catherine Ghiglieri [Doc. 152-12] at p. 41.
[8]  *See* Lloyd's Opp. [Doc. 152], at 20 n. 63 (stating that Lloyd's "do[es] not contend that the pre-policy period OREO expenditures are Wrongful Acts.").
[9]  Lloyd's Response to FDIC-R's Statement of Facts with Additional Facts ("Lloyd's Resp. to FDIC-R's SOF") [Doc. 152-1], admitting the relevant portion of FDIC-R's fact 13; *see also* Ghiglieri Deposition [Doc. 154], at 105:3-105:15 (stating that once Lloyd's Insureds received the CAMELS 5 rating on September 15, 2008, they knew "the regulators were of the view that this bank was very

These admissions defeat Lloyd's Opposition, and mandate summary judgment in favor of the FDIC-R. Each of the authorities upon which Lloyd's relies confirms that the "common nexus" must either be the same type of wrongful conduct or the same wrongful scheme.[10] *See, e.g., Brecek & Young Advisors v. Lloyd's of London Syndicate 2003,* No. 4:11CV3003, 2012 U.S. Dist. LEXIS 163441, at *47 (D. Neb. Nov. 14, 2012) (wrongful acts all arose "out of the ***same fraudulent scheme***") (emphasis added); *Brecek & Young Advisors v. Lloyds of London Syndicate 2003*, 715 F.3d 1231, 1238 (10th Cir. 2013) (all claims involved the same type of conduct – the sale of unsuitable investment products and flipping/churning accounts); *Kilcher v. Cont'l Cas. Co.*, 747 F.3d 983, 990 (8th Cir. 2014) (claims against a financial advisor were interrelated because advisor "engaged in the ***same pattern of deception*** with each [p]laintiff") (emphasis added); *Foster v. Summit Med. Sys.*, 610 N.W.2d 350, 353 (Minn. Ct. App. 2000) (two lawsuits that sought damages arising out of defendant's scheme to artificially inflate stock prices by disseminating false and misleading financial statements were interrelated); *Weaver v. Axis Surplus Ins. Co.,* No. 13-cv-7374, 2014 U.S. Dist. LEXIS 154746, at *41 (E.D.N.Y. Oct. 30, 2014) (claims shared a common nexus where they both arose from an alleged scheme to defraud customers);

---

probably going to fail in the near term.") (Objection as to form omitted).
[10] The relevant New York authorities cited by FDIC-R in its Motion [Doc. 144-1], pp. 13-15, confirm the same principle.

-4-

*Continental Cas. Co. v. Wendt*, 205 F.3d 1258 (11th Cir. 2000) (finding claims interrelated because they arose from a single course of wrongful conduct designed to promote investment in a company).

Lloyd's makes no argument that the conduct involved in the Wrongful CDLD Lending was factually similar to the conduct involved in the Wrongful OREO Expenditures. It was not, as the following undisputed facts establish:

- The Wrongful OREO Expenditures began in the fall of 2008, whereas the wrongful CDLD loan approvals occurred from 2005 to 2007.[11]

- The CDLD loans and the OREO rehabilitation spending were subject to different Omni policies, banking standards, and federal rules and regulations.[12]

- The Wrongful CDLD Lending program was overseen by Levine, whereas the Wrongful OREO Expenditures occurred under the authority of Klein, Perrine, and Cohen after August 2008.[13]

- The conduct constituting the Wrongful CDLD Lending included "the use of 'quarterbacks,' 'flipping' OREO, [] failure to ensure [] borrowers were creditworthy, improper appraisals on both new loans and OREO, violating loan-to-value ratios, failing to have a system in place to track draws, and following an 'unwritten, undocumented' loan modification policy that 'amounted to nothing more than extending a loan (and dollars) whenever the transaction lasted more than one year.'"[14]

- In contrast, the conduct constituting the Wrongful OREO Expenditures

---

[11] Lloyd's Resp. to FDIC-R's SOF [Doc. 152-1], admitting FDIC-R's fact 24, and Lloyd's additional facts 72, 80.

[12] Lloyd's Resp. to FDIC-R's SOF [Doc. 152-1], admitting FDIC-R's fact 32.

[13] Lloyd's Resp. to FDIC-R's SOF [Doc. 152-1], admitting FDIC-R's fact 30, and Lloyd's additional fact 8.

[14] *See* Lloyd's Resp. to FDIC-R's SOF [Doc. 152-1], Lloyd's additional facts 26, 35-38, 70.

-5-

consisted of spending millions of dollars of Bank funds to renovate OREO after September 15, 2008, the date the Lloyd's Insureds knew the Bank's failure "in the near term" was "highly probable."[15]

Nor does Lloyd's argue that the Wrongful CDLD Lending and the Wrongful OREO Expenditures were part of the *same wrongful scheme*. Rather, Lloyd's admits that the OREO strategy was implemented by the Bank's Board **after** the Wrongful CDLD Lending had ceased.[16] Lloyd's further admits that the OREO plan was not *itself* wrongful. Lloyd's own expert, Catherine Ghiglieri, opined in her report that the Bank's OREO strategy was "one that banks with rising levels of OREO, especially in down real estate markets, implement," and was "a common strategy [she] saw during the time [she] was a bank regulator."[17] Ms. Ghiglieri also conceded in her deposition that the OREO plan was **not** itself wrongful.[18]

Thus, because the Wrongful CDLD Lending and the Wrongful OREO

---

[15] Lloyd's Resp. to FDIC-R's SOF [Doc. 152-1], admitting the relevant portion of FDIC-R's fact 13, and Lloyd's additional fact 80; *see also* Ghiglieri Depo. [Doc. 154] at 105:3-105:15.

[16] *See* Lloyd's Resp. to FDIC-R's SOF [Doc. 152-1], Lloyd's additional facts 32 (lending stopped in December 2007) and 41 ("In December 2007, because of the growth in OREO, the Bank adopted and began executing a strategy aimed at minimizing its loss due to failed redevelopment loans."); *see also* Lloyd's Opp. [Doc. 152], p. 3 (the "OREO Expenditures were the *direct result* of a loss-mitigation strategy the Bank implemented to minimize potential losses resulting from the fallout of the CDLD Wrongful Acts."), p. 17 ("these expenditures were made pursuant to a strategy that the Bank implemented as a *result* of the CDLD Wrongful Acts.").

[17] *See* Expert Report of Catherine Ghiglieri [Doc. 152-12], at p. 41.

[18] *See* Ghiglieri Depo. [Doc. 154] at 98:14-102:24.

Expenditures did *not* involve the same type of wrongful conduct, and were not part of the same wrongful scheme, there is no sufficient factual nexus between them, and the Retroactive Exclusion does not apply. *See Glascoff,* 2014 U.S. Dist. LEXIS 64858, at *12.

Finally, Lloyd's assertion that the Retroactive Exclusion applies because the OREO Wrongful Acts committed after August of 2008 supposedly "sprang directly from the CDLD Wrongful Acts" which had ceased by December of 2007 is unsubstantiated and contrary to Lloyd's own admissions. Lloyd's admits that the Lloyd's Insureds were not compelled to make the OREO expenditures, but rather, chose to do so.[19] In other words, the Lloyd's Insureds made a voluntary intervening business decision to make them after the CDLD lending had ceased. That intervening business decision renders the course of conduct pursuant thereto logically distinct from prior wrongful conduct, as numerous courts have held. *See, e.g., Eureka Federal Savs. & Loan Ass'n v. Am. Cas. Co.*, 873 F.2d 229, 234 (9th Cir. 1989); *Federal Savs. and Loan Ins. Corp. v. Burdette*, 718 F. Supp. 649, 660 (E.D. Tenn. 1989). As former Omni CEO Klein confirmed without contradiction, the course of conduct following the Bank's intervening business decision was "totally unrelated" to the prior course of CDLD lending.[20]

---

[19] Lloyd's Resp. to FDIC-R's SOF [Doc. 152-1], admitting FDIC-R's fact 29.
[20] *See* Deposition of Stephen Klein ("Klein Depo.") [Doc. 151], at 271:13-272:3,

-7-

The Court should reject Lloyd's expansive interpretation of the Retroactive Exclusion, not only because it is contrary to every one of the decisions upon which Lloyd's relies, but also because it would impermissibly stretch the meaning of the term "related" beyond all practical boundary.  For example, under Lloyd's theory, if the Bank acquired OREO as a result of a loan defaulting due to Wrongful CDLD Lending, and the Bank elected to sell the OREO years later, and the Bank was sued for the Wrongful Acts of an officer in the sale, the claim related to the sale would be considered a "result" of the Wrongful CDLD Lending.  Such an interpretation defies logic and common sense.  Indeed, as Lloyd's own expert concedes, at some level of abstraction, everything a bank does is related to everything else a bank does.[21]  As such, Lloyd's interpretation would render coverage illusory.

---

300:12-301:25, 303:2-304:15.

[21] *See* Ghiglieri Depo. [Doc. 154] at 119:3-120:3, 125:10-125:15.  The Lloyd's expert also conceded that (1) the CDLD lending and the later OREO expenditures were subject to different federal statutes and regulations, and (2) the Wrongful CDLD Lending had ceased before the Bank's Board made its intervening strategic decision to adopt the OREO rehabilitation strategy.  Ghiglieri Depo. [Doc. 154] at 94:1-96:19; 110:1-110:12.  Lloyd's expert further admitted that she failed to apply any relevant legal standards to support her conclusion as to the supposed interrelatedness of the Wrongful Acts at issue, and that it would be for the Court to apply those standards.  Ghiglieri Depo. [Doc. 154] at 110:22-112:4, 127:10-128:17.  Nor could she meaningfully distinguish between Bank functions and activities that supposedly were or were not related to the Bank's lending function, causing her finally to concede that ultimately *all* Bank activities and functions are interrelated depending upon "how far out you go."  Ghiglieri Depo. [Doc. 154] at 119, 124-125). Hence, her conclusions are essentially meaningless.

-8-

### C. The IvI Exclusion Does Not Apply

There is no dispute over the text of the IvI Exclusion, and no argument that it expressly precludes coverage for the FDIC-R's claims. Nor is there any dispute that the term "any bankruptcy proceeding" in the Receivership Exception to the IvI Exclusion is undefined. Because Lloyd's has not met and cannot meet its burden of proving that the terms of an exclusion preclude coverage,[22] the FDIC-R is entitled to a grant of summary judgment in its favor and a finding either that the IvI Exclusion does not apply, or that the Receivership Exception does.

#### 1. FDIC-R does not bring claims by, on behalf of, or at the direction of any of the Assureds.

The IvI Exclusion precludes coverage only for claims brought "by, on behalf of, or at the direction of any of the Assureds . . . ."[23] The Policy defines "Assureds" narrowly, as "the Company and the Directors and Officers."[24] Lloyd's fails to explain how the FDIC-R is asserting claims "on behalf of" the failed bank. The omission is deliberate because every court to consider this phrase or a similar phrase in an IvI Exclusion in the last five years has held the exclusion is either ambiguous or does not apply to the FDIC acting as Receiver. *See, e.g., St. Paul*

---

[22] *See Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012).
[23] Lloyd's Resp. to FDIC-R's SOF [Doc. 152-1], additional fact ¶ 61 (citing Policy [Doc. 149-23], at 15).
[24] Lloyd's Resp. to FDIC-R's SOF [Doc. 152-1], additional fact ¶ 56 (citing Policy [Doc. 149-23], at 19, § II.B).

*Mercury Ins. Co. v. FDIC as Receiver for Cmty. Bank & Trust*, 774 F.3d 702, 710-11 (11th Cir. Ga. 2014) ("*Miller*") (finding an exclusion with the phrase "by, or on behalf of" to be ambiguous).[25]

The rational of these cases is that the FDIC as Receiver's claims are distinct from the failed bank, which no longer exists. *See FDIC v. North Savannah*, 686 F.3d 1254, 1260-61 (11th Cir. 2012) (citing *Buczkowski v. FDIC*, 415 F.3d 594, 597 (7th Cir. 2005) (stating that the failed bank "vanishe[s] in a puff of smoke"). Under FIRREA, the FDIC's claims are brought by, on behalf of, and in the right of the FDIC as Receiver, an entity separate from the failed bank, to recover losses suffered by the bank's depositors, creditors and shareholders, and by the Deposit Insurance Fund. *See* 12 U.S.C. §§ 1821(d)(2)(A)(i) & (d)(10)-(11); § 1823(d)(3)(A); *see also Miller,* 774 F.3d at 709; *Progressive Cas. Ins. Co. v. FDIC as Receiver for Omni Nat'l Bank*, 926 F. Supp. 2d 1337, 1340 (N.D. Ga. 2013). The FDIC is, therefore, *not* acting for the failed bank. By federal statute, the FDIC as Receiver is independent of the bank and represents the interests of entities and persons other than the bank, which no longer exists.

Although Lloyd's agrees that the FDIC-R is not within the definition of

---

[25] *See* additional authorities cited in FDIC-R's Motion, Doc. 144-1, at pp. 23-24 and n. 54.

"Assureds,"[26] it contends that because an exception to the exclusion involves receivers (*i.e.*, the Receivership Exception), the original exclusion must have included receivers. However, other exceptions to the IvI Exclusion show this relationship is not binary. For example, exception 4 to the IvI Exclusion is for an employee "other than a director or officer" and exception 1 is for security holders of the bank, neither of which are part of the definition of "Assured" and therefore, are not excluded by the body of the exclusion.

Lloyd's reliance on *O'Melveny & Myers v. FDIC,* 512 U.S. 79 (1994) is also inapposite because that decision addressed whether federal law preempts the state law of imputation when FDIC sues as the receiver of a failed bank, not whether the FDIC's claims are precluded by the IvI Exclusion. 512 U.S. 79, 85 (1994). Other courts have easily distinguished *O'Melveny*, holding that "*O'Melveny* doesn't tell us whether 'on behalf of' means the same thing as 'steps into the shoes' or whether FDIC-R, who represents a number of interests, even steps into the shoes of the Bank for these particular claims." *Progressive Cas. Ins. Co. v. FDIC as Receiver for Vantus Bank*, 80 F. Supp. 3d 923, 947-950 (N.D. Iowa 2015) ("*Vantus Bank*"); *St. Paul Mercury Ins. Co. v. Hahn*, No. 8:13-cv-424-AG, 2014 U.S. Dist. LEXIS 153643, at *4 (C.D. Cal. Oct. 8, 2014) ("*Hahn*").

---

[26] Lloyd's Resp. to FDIC-R's SOF [Doc. 152-1], admitting FDIC-R's fact 5(a) and Lloyd's additional fact ¶ 56.

Lloyd's also argues, incorrectly, that the IvI Exclusion's Receivership Exception, which carves out from the exclusion claims brought by the "receiver" of the "Company" in "any bankruptcy proceeding," is inapplicable. Lloyd's argument is premised on the mistaken assumption that the undefined term "any bankruptcy proceeding" must be interpreted to be limited to proceedings under the U.S. Bankruptcy Code, and cannot include other types of insolvency proceedings, such as the insolvency of a federally insured bank. Lloyd's Motion [Doc. 149-1] at 20-21. To the contrary, Lloyd's chief underwriter, Chris Warrior, admitted that in his understanding, receivers do not exist in federal bankruptcy.[27] Thus, unless the term "receiver" is to be read inappropriately as superfluous,[28] Lloyd's could not have intended for the Receivership Exception to be limited to proceedings under the federal code.

Further, it is undisputed that the Policy does not define the term "bankruptcy" or "any bankruptcy proceeding."[29] As such, the undefined term must be given its commonly accepted or dictionary meaning.[30] Merriam-Webster dictionary, for example, defines bankruptcy broadly as "the quality or state of

---

[27] FDIC-R's Response to Lloyd's Additional Fact 62 (citing Warrior Depo. [Doc. 150], at 307:13-307:17 (form objection omitted)).
[28] *See Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003).
[29] FDIC-R's Response to Lloyd's Additional Fact 62 (citing Warrior Depo. [Doc. 150], at 214:17-215:5).
[30] *Brust v. Mut. of Omaha Ins. Co.*, 724 N.Y.S.2d 254, (N.Y. Sup. Ct. 2000); *Wade v. Allstate Fire & Cas. Co.*, 751 S.E.2d 153, 156 (Ga. Ct. App. 2013).

being bankrupt," and further defines a bankrupt as "a person who has done any of the acts that by law entitled creditors to have his or her estate administered for their benefit." Merriam-Webster.com, Web. 21 Aug. 2015.[31]

There can be no reasonable dispute that a bank receivership, under FIRREA, is fully consistent with the forgoing definitions. *See* 12 U.S.C. § 1821(c)(2)(A)(ii) (the FDIC is appointed a receiver "for the purpose of liquidation," or to "wind up the affairs" of a failed bank); *see also County Seat Stores, Inc.*, 280 B.R. 319, 325 (Bankr. S.D.N.Y. 2002) (holding that "a bankruptcy trustee is a statutory creature whose role is analogous to that of the FDIC."). Indeed, Chris Warrior, Lloyd's representative, admitted that when a bank is bankrupt, it goes into receivership.[32]

Accordingly, when, as here, the term "bankruptcy" is undefined in a policy, it must include bankruptcy equivalents, such as receiverships. Thus, to the extent the IvI Exclusion could be read to exclude claims by the FDIC – a dubious proposition other courts have rejected – the Receivership Exception would apply and the FDIC-R's claims would survive.

---

[31] *See also Florida Department of Financial Services v. National Union Fire Insurance Co.*, No. 4:11-cv-242, at *7 (N.D. Fla.) (attached to FDIC-R's Motion [Doc. 144] as Exhibit 2 [Doc. 144-3]) (citing definition of "bankruptcy" in BLACK'S LAW DICTIONARY 199 (Abridged 8th ed. 2005)).

[32] FDIC-R's Response to Lloyd's Additional Fact 62 (citing Warrior Depo. [Doc. 150], at 200:8-200:12).

4361950_1

### 2. The *BancInsure* Decisions Cited by Lloyd's Contain Different Policy Language and Do Not Apply

Lloyd's argues that when an IvI exclusion "contains a clearly expressed intent to include receivers," courts consistently have held such exclusions preclude coverage for claims by the FDIC as Receiver. Lloyd's Opp. [Doc. 152] at 23. As this Court knows, the materially different insured v. insured exclusions in the BancInsure policies state that the insurer "shall not be liable" for loss in connection with "a Claim by . . . any other Insured Person, the Company, *or any successor, trustee, assignee or **receiver*** of the Company." *E.g.*, *BancInsure, Inc. v. FDIC as Receiver for Columbian Bank & Trust*, 796 F.3d 1226, 1231 (10th Cir. 2015) (emphasis added).[33] The Lloyd's Policy at issue lacks the express reference to receivers in the exclusion, and only references receivers in the *exception* to the IvI Exclusion.[34] Thus, contrary to Lloyd's assertions, the Policy in this case does *not* "contain[] a clearly expressed intent to *include* receivers in [the] IvI exclusion,"[35] but instead clearly expresses an intent to *exclude* receivers from the IvI Exclusion.

---

[33] The BancInsure case decided by this Court is further distinguishable because none of the parties in that case asserted that the insured v. insured exclusion was ambiguous. *See, e.g., Davis*, No. 3:12-cv-113-TCB, 2013 U.S. Dist. LEXIS 46249, at *28 n. 5 (N.D. Ga. Mar. 20, 2013).

[34] Lloyd's Response to FDIC-R's SOF [Doc. 152-1], admitting FDIC-R's fact 6(b).

[35] Lloyd's Opp. [Doc. 149-1] at 23 (emphasis added).

For these reasons, the decisions cited by FDIC-R,[36] not the cases addressing the unique language in the BancInsure policies, provide the governing analysis and establish that the IvI Exclusion does not bar FDIC-R's claims in this case.

## II.   CONCLUSION

For these reasons and those set forth in the FDIC-R's Motion, summary judgment should be entered in favor of the FDIC-R.

Dated: December 23, 2015.

> Respectfully submitted,
> _____/s/ James A. Brown_____
> **LISKOW & LEWIS, APLC**
> James A. Brown (LA Bar #14101) (PHV)
> Carey L. Menasco (LA Bar #28131)  (PHV)
> 701 Poydras Street, Suite 5000
> New Orleans, LA 70139
> Tel:   (504) 581-7979
> Fax:   (504) 556-4108
> E-mail:      JABrown@Liskow.com
>                     CLMenasco@Liskow.com
>      -and-
> **SIMKINS HOLLIS LAW GROUP, PC**
> Jeanne Simkins Hollis
> Georgia Bar No. 646890
> 1924 Lenox Road, NE
> Atlanta, Georgia  30306
> Telephone: (404) 474-2328
> Facsimile: (770) 587-0726
>
> *Attorneys for Federal Deposit Insurance Corporation as Receiver for Omni National Bank*

---

[36]   *See* FDIC-R's Motion [Doc. 144-1], at pp. 24-25.

4361950_1

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I certify that this pleading complies with the font and point selections set forth in Local Rule 5.1(C).  This pleading has been prepared using Times New Roman font (14 point).

          /s/ James A. Brown
James A. Brown (LA Bar #14101) (PHV)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the above and foregoing pleading on December 23, 2015 using CM/ECF, which will cause a notice of electronic filing to be served on all registered users.  I further certify that I served a copy of the above and foregoing pleading to the following non-registered users by United States Mail, properly addressed and postage prepaid, to the following:

    Jules N. Greenblatt
    5284 Marston Road
    Atlanta, GA 30360

    Shannon C. Livengood
    137 Johnson Ferry Road
    Suite 2140
    Marietta, GA 30068

    Stephen M. Klein
    15821 Ventura Blvd., Suite 560
    Encino, California 91436
    stephen@starworld.us

          /s/ James A. Brown
James A. Brown (LA Bar #14101) (PHV)